IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MUIR ENTERPRISES, INC., dba MUIR COPPER CANYON FARMS,<br><br>            Plaintiff,<br>v.<br><br>DELI NATION LLC, dba JASON'S DELI; DELI PLANET, INC.; DELI PLANET LLC; CLIVE BRAD PUSEY; COREY W. SANDBERG; MICHAEL T. FLYNN; and JAMES T. MEADOWS,<br><br>            Defendants. | **MEMORANDUM DECISION AND ORDER DENYING SUMMARY JUDGMENT**<br><br>Case No. 2:12-cv-00120-DN<br><br>District Judge David Nuffer |

## INTRODUCTION

Plaintiff Muir Enterprises, Inc. dba Muir Copper Canyon Farms ("Muir") brought this action to recover a $117,993.99 balance owed for produce sold and delivered between May 3, 2011, and September 26, 2011.[1] The deliveries were made to four restaurants which are now closed: Deli Nation of Layton LLC, Deli Nation of Gateway LLC, Deli Nation of Orem LLC, and Deli Nation of Fashion Plaza LLC (the "DN Restaurants"). Defendants Deli Planet LLC and Deli Planet Inc. allegedly acquired the assets of the DN Restaurants and Deli Nation LLC after the produce sales.[2] Plaintiff claims[3] that Deli Planet LLC and Deli Planet Inc. thereby acquired assets impressed with a statutory trust, under the Perishable Agricultural Commodities Act

---

[1] First Amended Complaint at 3, ¶¶ 6–7, docket no. 47, filed October 1, 2012.

[2] *Id.* at 4, ¶¶ 10–11.

[3] *Id.*

("PACA").[4] PACA creates a statutory trust on behalf of produce sellers and permits them to pursue assets impressed with that trust to secure payment.[5]

Defendants Deli Planet, Inc.; Deli Planet LLC; Michael T. Flynn; and James T. Meadows (collectively "Deli Planet") move for summary judgment on two issues: (1) that Muir is not entitled to the trust protections under PACA because Muir delivered produce to the DN Restaurants "on more than 30 days net terms;"[6] and (2) that Deli Planet is not "bound by the contractual terms between Plaintiff and Deli Nation regarding interest and attorney fees."[7] For the reasons set forth more fully below, Deli Planet's motion is DENIED.

## UNDISPUTED FACTS

1.  Deli Nation began being in arrears in its payment to Muir between 2009 and 2010.[8]

2.  In the spring of 2010, Muir held a meeting with Deli Nation officers to discuss the arrears. At that time Deli Nation was 60 days in arrears.[9]

3.  By August 2010, Deli Nation was over 60 days in arrears.[10]

4.  By the summer of 2011, the relevant time period of this law suit, Deli Nation was reporting it was in arrears to Muir over 60 days.[11]

---

[4] 7 U.S.C. § 499a–t (2012).

[5] *Id.* § 499e(c).

[6] Motion for Summary Judgment at 2, docket no. 91, filed September 29, 2014.

[7] *Id.*

[8] Plaintiff's Memorandum in Opposition to Defendants Deli Planet, Inc., Deli Planet, LLC, Michael Flynn, and James T. Meadows' Motion for Summary Judgment ("Opposition Memo") at 5, docket no. 92, filed October 23, 2014.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 6.

5. During May 3, 2011 to September 9, 2011, Deli Nation made the following five payments to Muir:[12]

| Payment date | Payment amount | Applied to invoices dated | Days in arrears |
|---|---|---|---|
| May 9, 2011 | $30,000.00 | 1/12/11 to 2/5/11 | 79 |
| June 21, 2011 | $10,0005.91 | 2/5/11 to 2/18/11 | 110 |
| June 27, 2011 | $45,000.00 | 2/7/11 to 3/22/11 | 83 |
| July 30, 2011 | $40,000.00 | 3/23/11 to 4/27/11 | 80 |
| September 9, 2011 | $5,000.00 | 4/28/11 to 5/2/2011 | 116 |

6. In late June 2011, Muir and Deli Nation met again to discuss the arrears.[13] At that meeting, Muir discussed the arrears, threatened to file a PACA suit against Deli Nation and to place Deli Nation on cash-on-delivery ("COD"). At that meeting Muir agreed not to file a PACA suit and not to place Deli Nation on COD. Muir's agreement to forbear collection action was conditioned on Deli Nation "making continued progress and making chunk payments on the overdue debt."[14] Muir agreed to Deli Nation's request not to "cause trouble" while Deli Nation tried to sell the company.[15]

7. Muir told Deli Nation it would apply payments received from Deli Nation to the oldest outstanding invoices.[16]

---

[12] *Id.* at 6-7. Deli Planet's initial calculation of the number of days in arrears was incorrect because it applied invoice dates, not the dates payments were due. Opposition Memo at 7; Deli Planet Defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment ("Reply") at 3, docket no. 93, filed November 5, 2014. The initial calculation for each of the five payments, respectively, was: 93 days, 124 days, 97 days, 94 days, 130 days. Motion for Summary Judgment at 6-7. The correct calculation "should be adjusted by deducting 14 days from the totals . . . ." Reply at 3. The "Days in Arrears" figures in this chart reflect the 14-day deduction.

[13] Opposition Memo at 8.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 9.

8.  During the summer of 2011, Muir delayed placing Deli Nation on COD to keep Deli Nation's business going while Deli Planet performed due diligence for a possible purchase. Muir's CEO testified that "I delayed putting them on COD based on Brad's representations that they needed to keep the business going and he could not pay $100,000 until the transaction occurred. It was represented to me from Brad that most likely the means of us collecting the arrears was from the proceeds of a transaction between the two companies."[17]

9.  On September 9, 2011, Muir placed Deli Nation on COD, meaning that Muir electronically paid itself out of Deli Nation's bank account for the deliveries.[18] However, Muir did not initiate a draft from Deli Nation's bank account to pay for the invoices dated September 25, and 26, 2011.[19]

10. After the produce sales,[20] Deli Planet executed an "Asset Purchase Agreement" which transferred certain Deli Nation assets to Deli Planet.[21] Deli Nation and Deli Planet are separate corporate entities.[22]

11. The "invoices subject to this litigation"[23] were addressed and sent to Deli Nation, but remain unpaid.[24] The produce listed in those invoices was delivered to Deli Nation.[25]

12. The terms of the unpaid invoices included interest and attorney fees,[26] and each invoice contained a statement that payment terms were "14 DAYS" and that the produce was

---

[17] *Id.* at 8.

[18] *Id.* at 7.

[19] *Id.* at 7-8.

[20] The parties have not provided the date of the Asset Purchase Agreement or a copy of the document.

[21] Motion for Summary Judgment at 15.

[22] *Id.* at 13.

[23] The "invoices subject to this litigation" are dated between May 3, 2011 and September 26, 2011 and total $117,993.99. Docket no. 65-1.

[24] Opposition Memo at 11.

[25] *Id.* at 13.

sold "subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e (c))."[27]

## DISCUSSION

### Standard for Summary Judgment

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[29] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[30]

### Issue 1 – Summary Judgment is Not Appropriate on the Defense of an Agreement to Extended Payment Period

Defendants argue that Muir is not entitled to the trust protections under PACA because Muir delivered produce to the DN Restaurants "on more than 30 days net terms."[31] "The maximum time for payment for a shipment to which a seller, supplier, or agency can agree, prior to the transaction, and still be eligible for benefits under the [PACA] trust is 30 days after receipt and acceptance of the commodities as defined in § 46.2(dd) and paragraph (a)(1) of this section."[32]

---

[26] *Id.*

[27] Invoices, docket no. 65-1.

[28] Fed. R. Civ. P. (56)(a).

[29] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[30] *Id.*

[31] Motion for Summary Judgment at 2, docket no. 91, filed September 29, 2014.

[32] 7 C.F.R. 46.46(e)(2) (2011).

The legal standard has evolved for evidence needed to show such an agreement. In *A&J Produce Corp. v. CIT Group/Factoring, Inc.*,[33] a PACA suit was brought against CIT Group after it failed to pay for produce it received from A&J.[34] The parties filed cross-motions for summary judgment. A&J, the produce supplier, argued that it was entitled to the protections and benefits of PACA, while CIT Group argued that A&J had "lost the protection of the PACA trust because over their course of dealing . . . , and through oral agreements, they [A&J] extended the time for payment past the thirty-day maximum allowed by the statute."[35]

The court said that "oral agreements have no effect on produce sellers' trust protection [, and] the parties must set forth such agreements in writing to be effective."[36] There had not been "any evidence submitted to indicate that[] any of the plaintiffs entered into *written agreements* to extend the terms of payment past the thirty-day maximum."[37] Therefore, the "course of dealing defense [was] insufficient as a matter of law" since "[t]he only waiver of rights which the statute allows is a written agreement to extend terms beyond thirty days."[38] Thus, under *CIT Group*, parties were required to enter into an agreement *in writing* in order to waive PACA trust protections.

However, in a more recent case involving the same plaintiff, *A&J Produce Corp. v. City Produce Operating Corp.*,[39] the court pointed out that a Second Circuit case, *American Banana*

---

[33] *A&J Produce Corp. v. CIT Group/Factoring, Inc.*, 829 F. Supp. 651 (S.D.N.Y. 1993).

[34] *Id.* at 652-53.

[35] *Id.* at 654.

[36] *Id.* (quoting *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777 (8th Cir. 1991)).

[37] *CIT Group*, 829 F. Supp. at 655 (emphasis in original).

[38] *Id.*

[39] *A&J Produce Corp. v. City Produce Operating Corp.*, Case no. 10 Civ. 5610(PKC), 2011 WL 6780614 (S.D.N.Y. Dec. 23, 2011) (unpublished).

6

*Co. v. Republic Nat'l Bank of N.Y., N.A.*,[40] rejected the notion that an agreement must be in writing to constitute a waiver of PACA trust protections.[41] The court noted that the *American Banana* decision held that "a failure to reduce to writing an agreement that violates PACA [] should not result in the preservation of the trust, where the same agreement, if memorialized, would have resulted in forfeiture of such protection."[42] "Thus, under *American Banana Co.*, a court may weigh course of dealings evidence to determine whether the parties reached an agreement that forfeits a PACA trust."[43]

*City Produce* further pointed out that in April 2011 the PACA regulations were amended "to state that PACA's 30-day payment requirement applies only to agreements entered into prior to the transaction."[44] The amended regulations do not expressly require that the agreement be "in writing." In the end, *City Produce* denied summary judgment because "[n]either party has come forward with evidence as to whether, 'prior to the transaction,' the parties expressly agreed that payment would be made within 30 days of the deliveries . . . ."[45]

Therefore, the question of existence of an agreement is not simply a search for a document, but depends on finding an agreement in fact. Another important issue is the timing of the agreement. To constitute a PACA waiver, an agreement to extended payment terms must be entered into prior to the sale transaction.

---

[40] *American Banana Co. v. Republic Nat'l Bank of N.Y., N.A.*, 362 F.3d 33 (2d Cir. 2004).
[41] *City Produce*, 2011 WL 6780614 at *3-*4.
[42] *Id.* at *4 (quoting *American Banana*, 362 F.3d at 46-47) (alteration in original).
[43] *City Produce*, 2011 WL 6780614 at *4.
[44] *Id.*
[45] *Id.* at *5.

**Deli Planet's Evidence**

In support of its argument that an agreement was reached to extend payment terms beyond 30 days, Deli Planet points to an email from Muir to Deli Nation stating "I need to keep this account at 60 days to stay on terms"[46] and asserts that "Muir did not consider an account to be delinquent until it was 60 days in arrears."[47] Deli Planet further shows that Muir accepted payments for produce outside of 30 days after holding meetings with Deli Nation and coming to an agreement to accept late payments and apply payments to the oldest outstanding invoices. In support of that statement, Deli Planet points to an email from Muir to Deli Nation stating "I need to keep this account at 60 days to stay on terms."[48]

**Muir's Evidence**

Muir, on the other hand, argues that an agreement was not reached to extend payment terms beyond 30 days, and claims that, although it accepted late payments and applied payments to the oldest outstanding invoices, it did not "agree" to anything other than a 14-day payment term.[49] Each invoice included a statement that payments were due within 14 days and that produce was being delivered subject to PACA.[50] Muir's CEO stated the reason he agreed to accept late payments from Deli Nation was to give Deli Nation the best chance to sell their restaurants and not put them out of business prematurely by demanding immediate payment in full.[51]

---

[46] Motion for Summary Judgment at 8.

[47] *Id.*

[48] *Id.* at 9.

[49] Opposition Memo at 18.

[50] *Id.* at 15.

[51] *Id.* at 20 ("Muir was informed that its best chance at recovery of the balance due would be to hold off on collection efforts and not scuttle the potential deal between Deli Nation and the Deli Planet entities.") *See also* Motion for Summary Judgment at 8 ("Muir's CEO testified that 'I delayed putting them on COD based on Brad's representations that they needed to keep the business going and he could not pay $100,000 until the transaction

Muir also provides additional evidence regarding the statement that Muir needed to keep the account at "60 days to stay on terms." It quotes deposition testimony of Ms. Jeffs, the Muir employee who wrote the email regarding 60-day terms. Her testimony is as follows:

> **Q So was it your policy at that time that Deli Nation was on 60-day term?**
> A No. They are on 14-day terms.
> **Q They were on 14-day term?**
> A Yes.
> **Q Okay. And you putting them on – what you say there, needing to keep this account at 60 days term, what was the purpose of that?**
> A. So that they do not go to COD.[52]

The existence of an agreement to extended payment terms is in dispute, and is a triable fact preventing summary judgment.

Muir also argues that it did not agree (in any form) "prior to the transaction" to extend payment terms beyond what was printed on its invoices.[53] It argues that agreeing to accept late payments after an invoice is overdue is much different than agreeing "prior to the transaction" to accept payments beyond 30 days,[54] and that agreeing to a schedule for past due amounts does not forfeit PACA trust eligibility.[55] Muir also asserts that delaying COD status based on past overdue invoices is far different from a pre-sale agreement that expressly authorizes invoices to be paid outside 30 days.

Muir acknowledges it met with Deli Nation to discuss the arrears, but there is a great deal of uncertainty regarding what agreements, if any, were made "prior to the transaction" about

---

occurred. It was represented to me from Brad that most likely the means of us collecting the arrears was from the proceeds of a transaction between the two companies.'" (quoting Muir Deposition at 19:10-17)).

[52] Opposition Memo at 10.

[53] *Id.* at 21 ("There is no evidence here, and Defendants can present none, that Muir ever expressly agreed to payment terms outside of the 30 day maximum set forth by PACA.").

[54] *Id.* at 18 (citing 7 C.F.R. 46.46.(e)(3).

[55] Opposition Memo at 18 ("Under Defendants' theory, a produce supplier would be required to immediately cease shipments to a defaulting buyer, or place the buyer on cash-on-delivery terms, and initiate a lawsuit for the balance due, in order to avoid a waiver of trust rights.").

acceptable payment periods. The timing of any agreement is also in dispute, preventing summary judgment.

### Issue 2 – Summary Judgment is Not Appropriate on the Attorney Fees Issue

Deli Planet also seeks summary judgment that it cannot be required to pay attorney fees and interest which Deli Nation agreed to pay. Deli Planet correctly argues that it was "not party to the contract (invoices) between Muir and Deli Nation, nor are Muir's claims against the Deli Planet Defendants based on contract."[56]

Muir asserts that Deli Planet should be responsible for attorney fees and interest because PACA allows recovery of all "sums owing in connection" with unpaid PACA transactions "if such a recovery is part of the parties' contract."[57] Muir argues that "[i]t is irrelevant that [Deli Planet] Defendants were not a party to the agreement with Muir for payment of interest and attorneys' fees. Because these amounts are considered 'sums owing in connection' with the underlying principal PACA debt, they are included in the total PACA balance due."[58]

Muir cites to several cases.[59] *Coosemans Specialties, Inc. v. Gargiulo*,[60] *Country Best v. Christopher Ranch, LLC*,[61] and *Middle Mountain Land & Produce v. Sound Commodities Inc.*[62] stand for the proposition that attorney fees and interest generally are recoverable under PACA as "sums owing in connection" with unpaid PACA transactions. However, these three cases do not address the precise factual situation in this case, where the assets of one entity (Deli Nation) have been acquired by a separate corporate entity (Deli Planet), and the separate corporate entity (Deli

---

[56] Motion for Summary Judgment at 13.

[57] Opposition Memo at 21.

[58] *Id.* at 22.

[59] *Id.* at 21, n. 68.

[60] *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 708 (2d Cir. 2007).

[61] *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004).

[62] *Middle Mountain Land & Produce v. Sound Commodities Inc.*, 307 F.3d 1220, 1222 (9th Cir. 2002).

Planet) argues it should not have to pay attorney fees and interest for unpaid transactions because it was not party to the original purchase contract between buyer (Deli Nation) and seller (Muir).

Another line of cases cited by Muir[63] establishes that a third party holding assets subject to a PACA trust may be required to pay any unpaid amounts the principal trustee would have been required to pay, including attorney fees, under certain circumstances.[64] For example, in *Nickey Gregory Co., LLC v. AgriCap, LLC*, the court noted that

> when trust assets are held by a third party, resulting in the failure of the trustee to pay unpaid sellers of perishable agricultural commodities, the third party may be required to disgorge the trust assets unless the third party can establish that it has some defense, such as having taken the assets as a bona fide purchaser without notice of the breach of trust.[65]

Ultimately, the court found the PACA obligation included attorney fees.[66]

In *E. Armata, Inc. v. Platinum Funding Corp.*[67] the court noted that attorney fees are not awarded under PACA unless "an independent basis exists for the award."[68] The court found the trust secured recovery of attorney fees because there was a contractual obligation to pay them.[69] And the holder of the produce purchaser's assets was required to pay attorney fees as "sums owing in connection with such transactions" even though not a party to the original agreement between the produce buyer and seller.

---

[63] Opposition Memo at 22, n. 71.

[64] *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 596 (4th Cir. 2010); *E. Armata, Inc. v. Platinum Funding Corp.*, 887 F.Supp. 590, 594-95 (S.D.N.Y. 1995).

[65] *Nickey Gregory*, 597 F.3d at 595-96.

[66] *Id.* at 607.

[67] 887 F.Supp. 590, 594-95 (S.D.N.Y. 1995).

[68] *Id.* at 594.

[69] *Id.* at 595.

Thus, even though Deli Planet was not a party to the contract between Deli Nation and Muir, Deli Planet, if found to be a holder of trust assets, may be required to disgorge trust assets and pay for interest and attorney fees.

As discussed above, there is a factual question about whether PACA trust protections were waived by agreement. That threshold issue would determine whether Deli Planet is in fact responsible for interest and attorney fees in connection with those acquired assets. Therefore, summary judgment is DENIED on the interest and attorney fees issue.

## ORDER

For the foregoing reasons, Defendant Deli Planet's Motion for Summary Judgment[70] is DENIED.

Dated January 13, 2015.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[70] Motion for Summary Judgment, docket no. 91, filed September 29, 2014.

12